IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT NUNN,<br>    **Plaintiff,**<br><br>    v.<br><br>CITY OF COATESVILLE, d/b/a COATESVILLE POLICE DEPARTMENT, OFFICER THOMAS J. MACK, and OFFICER FELICIA DELLIGATTI,<br>    **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  24-6810 |

**MEMORANDUM OPINION**

  This civil rights action arises from the alleged use of excessive force by Defendants Thomas Mack and Felicia Delligatti—police officers for the City of Coatesville (the "City"), which is also a Defendant here—during the arrest of Plaintiff Robert Nunn.  He asserts claims against all Defendants under 42 U.S.C. § 1983 for excessive force, cruel and unusual punishment, and municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978)—all purportedly in violation of the Fourth and Fourteenth Amendments.  He also brings a battery claim under Pennsylvania law against Delligatti.

  The City, on behalf of itself, Mack, and Delligatti, now moves to partially dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, the Defendants seek dismissal of: (1) all claims against Mack; (2) the cruel and unusual punishment claims; (3) the excessive force claim under the Fourteenth Amendment; and, (4) the *Monell* claim.   For the reasons that follow, the City's Motion shall be granted in its entirety.

  **I.**  **FACTUAL BACKGROUND**[1]

---

[1] The following factual recitation is taken from Nunn's Amended Complaint, well-pleaded allegations from which are taken as true at this stage.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

1

On the morning of October 6, 2022, Nunn was arrested, handcuffed, and taken to the Coatesville Police Department. Upon arrival, he was instructed to get out of the police cruiser and walk towards the entrance of the building. At some point while walking, Nunn attempted to turn around to speak with Mack. But before he could do so, Delligatti grabbed him by his forearms and shoved him to the ground. Nunn was unable to stand on his own, so Mack and another officer helped him up and ushered him inside the building for processing. Nunn was later transported by ambulance to the Paoli Trauma Center for evaluation and treatment. As a "direct and proximate result of Defendants' conduct," he avers that he sustained a serious head injury and endured "humiliation, shame, and mental anguish."

## II.     LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11 (citation omitted). In so doing, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. DISCUSSION

Nunn's federal claims against the City, Mack, and Delligatti arise under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. To maintain an action under Section 1983, Nunn must plausibly allege a violation of a right secured by the Constitution or laws of the United States that was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Uncontested Motions

At the outset, Nunn does not oppose Defendants' Motion insofar as it pertains to all claims against Mack, and those against the City and Delligatti for cruel and unusual punishment. Therefore, their Motion shall be granted as uncontested in those respects.

Next, although Defendants make much of whether Nunn has a cognizable excessive force claim under the Fourteenth Amendment, he has presented no arguments to rebut their assertions and has therefore waived any opposition thereto. *See Valentin v. Attorney General of U.S.*, 386 F. App'x 279, 282 (3d Cir. 2010); *Skold v. Galderma Lab'ys, L.P.*, 99 F. Supp.3d 585, 598 (E.D. Pa. 2015) ("Where an issue of fact or law is raised in an opening brief" but is subsequently "uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue." (citation omitted)). Accordingly, their Motion shall be granted as uncontested in this respect.

#### B. *Monell* Liability

What remains of Defendants' Motion, then, is their argument seeking dismissal of Nunn's *Monell* claim against the City. Municipalities, like the City, cannot be held vicariously liable under the doctrine of *respondeat superior* for the federal constitutional or statutory violations of their employees. *See Monell*, 436 U.S. at 691, 694; *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). Municipal liability under Section 1983 instead must be predicated on injuries allegedly caused by either: (1) actions taken by a municipality pursuant to official policies or customs of the municipal entity; or, (2) "a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

"Plaintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed under a failure or inadequacy theory, and vice versa." *Id.* Notably, "an unconstitutional municipal policy or custom is necessary for the former theory, but not for the latter, failure or inadequacy theory." *Id*. Taking each theory in turn, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). Customs can be shown where the "practices of state officials . . . [are] so permanent and well settled as to virtually constitute law." *Id*. (internal quotation omitted). The plaintiff must present evidence that an official with "final policy making authority" either "authorized or acquiesced" in the policy or custom. *Oaks v. City of Philadelphia*, 59 F. App'x 502, 504 (3d Cir. 2003).

*Monell* imposes "rigorous standards of culpability and causation" for municipal liability,

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997), so "[a]lthough a policy or custom is necessary to plead a municipal claim it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798.  Instead, the policy or custom at issue must be shown to be the "proximate cause" of the plaintiff's alleged injuries.  *Kneipp*, 95 F.3d at 1213.  This requires showing an "affirmative link" between the policy or custom and the particular constitutional violation, *see Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quotations omitted), or that the municipality's conduct was the "moving force" behind the plaintiff's alleged injuries, *Berg*, 219 F.3d at 276 (quoting *Bryan Cnty*., 520 U.S. at 404).  Allegations that "simply paraphrase[ ]" the standard for municipal liability are too vague and generalized to support a Monell claim.  *McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009).

Failure or inadequacy claims, on the other hand, require the "equally demanding requirement of demonstrating" that the proffered shortcoming "amount[s] to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106 (citation omitted).  To state a claim under this theory, a plaintiff must allege that: (1) municipal policymakers knew that its employees would confront a particular situation; (2) the situation involved a difficult choice or a history of employees mishandling the situation; and, (3) the wrong choice by an employee would frequently cause deprivation of constitutional rights.  *Id*. (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).  Although this theory of liability "arose in the failure-to-train context," it nonetheless "applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers." *Id*. at 105 (citation omitted).

"Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of" failure or inadequacy claims.

5

*Thomas v. Cumberland Cnty*., 749 F.3d 217, 223 (3d Cir. 2014) (cleaned up).  However, the Supreme Court has "posited" that a single incident may be sufficient to maintain a claim under this theory where it is "so obvious" that the situation will result in a constitutional violation.  *Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)); *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011) (To hold a municipality liable under Section 1983 without proof of a pre-existing pattern of violations, "the unconstitutional consequences of failing to train" must be "patently obvious" such that an actual violation of constitutional rights is a "highly predictable consequence" of that failure.); *see also Lundy v. City of Philadelphia*, 2023 WL 4166457, at *3-4 (E.D. Pa. June 23, 2023) (applying framework).  In evaluating these so-called "single incident" claims, the "likelihood that the situation will recur" and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights" are instructive.  *Bryan Cnty*, 520 U.S. at 409.

Generously construing the Amended Complaint, Nunn presents two theories of *Monell* liability: (1) the City's police force had a policy, custom, and practice of employing excessive force; and, (2) the City failed to adequately train and supervise officers who engaged in such conduct.  Starting with his first theory, Nunn's "policy" allegations fail because he has not pointed to any specific "proclamation, policy, or edict" issued by a final City policymaker.  *See Berg*, 219 F.3d at 275.  To satisfy the pleading standard, he must explicitly "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658 (emphasis added) (citation omitted).[2]  The Amended Complaint, however, simply alleges that

---

[2] Citing *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999), Nunn asserts that he need not "identify a particular policy and attribute it to a policymaker" at this stage, as the Third Circuit has called such a requirement "unduly harsh" without the "benefit of discovery." *Id.* at 357-58.  However, Nunn's argument ignores the Third Circuit's opinion in *McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009), which, as recited above, clarified the pleading standard for policy claims under *Monell*.

6

Nunn's Fourth Amendment rights were violated due to some municipal policy, which Nunn makes no attempt to even describe, let alone identify. Without connecting his allegations to any "official proclamation, policy, or edict issued by a final policymaker," *Est. of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp.3d 279, 298 (E.D. Pa. 2015), his policy claims therefore are insufficient in that they are too vague and generalized to support a *Monell* claim. *McTernan*, 564 F.3d at 658-59; *see also Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014).

Nunn's "custom" claim meets a similar fate, as he has not alleged with specificity any patterns or practices that were "so permanent and well settled as to virtually constitute law" such that the City was put on notice of a constitutional deficiency. *Berg*, 219 F.3d at 275-76. Rather, Nunn solely relies on the naked assertion that the City had a "custom" of "fail[ing] to properly train and supervise officers in the use of force," which is not the making of a municipal custom under *Monell*. *Compare Burke v. Twp. of Cheltenham*, 742 F. Supp.2d 660, 675 (E.D. Pa. 2010) ("Burke fails to present any facts regarding an official policy or custom on the part of the Township that caused civil rights violations to be made against him. Instead, he offers only bald assertions that such policies or customs existed without any support that would suggest that what happened to him on April 6, 2008, were not idiosyncratic actions of individual public actors.") with *Hicks v. City of Philadelphia*, 2023 WL 5278713, at *10 (E.D. Pa. Aug. 16, 2023) (declining to dismiss a *Monell* claim predicated upon an allegedly unconstitutional custom where the plaintiff described, *inter alia*, "a number of instances in which individual officers . . . fabricated information, a consent decree that led to monitoring reports which specifically referenced a 'code of silence' allowing misconduct to flourish, a narcotics squad that engaged in 'fabrication of search and arrest warrants and other false allegations,' and a Philadelphia City Paper publication that discussed the failure of the Internal Affairs Division to address allegations

of misconduct." (citations omitted)); *Alicea v. City of Philadelphia*, 2022 WL 17477143, at *5-6 (E.D. Pa. Dec. 6, 2022) (same where the plaintiff "cite[d] newspaper articles, government investigations, and a number of other cases of police misconduct" to show that "the City knew but did not stop the PPD from creating activity sheets without turning them over to attorneys, using coercive language in witness interviews, fabricating inculpatory evidence, and concealing exculpatory evidence").

The Amended Complaint thus fails to meet the "rigorous standards of culpability and causation" required to sustain a policy or custom claim under *Monell*—even at this stage with all inferences drawn in Nunn's favor. *Bryan Cnty.*, 520 U.S. at 405; *Estate of Roman*, 914 F.3d at 795, 798. Accordingly, the City's Motion shall be granted with this respect to those claims, which shall be dismissed. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile.").

Turning to Nunn's final theory of *Monell* liability, he alleges that the City was deliberately indifferent to the risks posed by its failure to train or supervise officers in the use of force. But that is all the Amended Complaint says on the subject. Although Nunn now feebly argues that the City "knows officers will be confronted with the decision to use force," which could "quickly turn into unconstitutional excessive force," the Amended Complaint is devoid of any facts demonstrating that the City or any of its decisionmakers were aware or on notice that officers would "confront" these types of situations. *See Forrest*, 930 F.3d at 106; *see also Neal v. Powell*, 2018 WL 2754071, at *5 (D.N.J. June 8, 2018) (finding that the plaintiff plausibly stated a deliberate indifference claim where the complaint detailed a "documented history of the

deployment of excessive force," of which the plaintiff alleged "that [the supervisor defendant] had knowledge"); *Hernandez v. City of Philadelphia*, 2022 WL 4359992, at *5 (E.D. Pa. Sept. 19, 2022) (same where the plaintiff detailed allegations of a dozen instances of excessive force over the course of eight years that were similar to the one at issue in the complaint). In the absence of such details—or any other arguments that he is entitled to relief under a theory of "single incident" liability, *see Thomas*, 749 F.3d at 223—Nunn has failed to plausibly state a claim of deliberate indifference. *Id.*; *see also Gass v. Matthews*, 2019 WL 1641064, at *5 (E.D. Pa. Apr. 16, 2019) ("First, as noted, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.' Here, Plaintiff offers no evidence establishing a pattern of similar violations." (quoting *Connick v. Thompson*, 563 U.S. at 62)). Therefore, the City's Motion shall be granted in this respect and Nunn's deliberate indifference claim shall be dismissed. *See Fletcher–Harlee Corp.*, 482 F.3d at 251.

## IV. CONCLUSION

For the foregoing reasons, the City's Motion shall be granted in its entirety. An appropriate order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

**WENDY BEETLESTONE, J.**