IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT NUNN,** <br> **Plaintiff,** <br><br> v. <br><br> **FELICIA DELLIGATTI,** <br> **Defendant.** | CIVIL ACTION <br><br><br><br> NO.  24-6810 |

### MEMORANDUM OPINION

Plaintiff Robert Nunn has brought suit, under 42 U.S.C. § 1983, against Defendant Felicia Delligatti, an officer with the City of Coatesville Police Department, for using excessive force in violation of the Fourth Amendment, as well as for battery under Pennsylvania law. Delligatti now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Fed. R. Civ. P. 56(a).  For the reasons that follow, her Motion shall be denied.

I.  **FACTUAL BACKGROUND**

On October 6, 2022, Delligatti, along with Officers Thomas Mack and Thomas Corcoran, responded to a call involving Nunn.  This was not Delligatti's first interaction with Nunn; in prior encounters, Nunn had been intoxicated, threatening, argumentative, and had "presented himself in a fighting stance."

Pursuant to the October 6 call, Nunn was arrested and charged with terroristic threats, simple assault, strangulation, resisting arrest, harassment, and disorderly conduct.  After he was handcuffed, while being escorted to the police vehicle, Nunn stated to Mack, in Delligatti's presence, that Mack was lucky that Nunn was restrained, because he could have "f—ed him up." Additionally, while officers struggled to put Nunn in the vehicle, Nunn exclaimed, "It's gonna take all you guys to get me in there."

1

Nunn was then transported to the Coatesville Police Department's secure garage. On the way there, he told Mack that he "could have killed any one of you guys" if he wanted. Upon arrival at the police station garage, surveillance footage, as well as Mack's and Delligatti's body-worn camera footage, shows Mack opening the car door and asking Nunn to exit. After several requests, and after Nunn stated he needed time to "decompress," Mack reached into the vehicle and took hold of Nunn's arm. Nunn responded that he was getting out and asked Mack to "ask politely," stating he was not "a f—ing animal." Delligatti then also directed Nunn to exit the car, to which Nunn replied that he was getting out, "mistress." Nunn then exited the vehicle.

Nunn appeared to look directly at Mack and stated that he "does not forget a face." He then began walking backward behind the vehicle in the direction of the processing room, still handcuffed and maintaining eye contact with Mack. Mack placed his hands on Nunn's shoulders, turned him to face forward, and instructed him to "keep going." But Nunn again turned to face Mack, stated he was going, and remarked that Mack had not told him which way to walk. Nunn continued walking backward as Mack placed a hand on Nunn's chest.

At that point, Delligatti moved toward them from several feet away, saying "keep it up," with her arms extended. When she made contact with the back of Nunn's arms, Nunn's body moved forward toward the police vehicle, consistent with Delligatti's direction of travel, and Nunn fell to the ground, during which Delligatti exclaimed "shut the f— up."

Throughout the fall, Delligatti maintained her hold on Nunn's arms. Nunn remained on the ground for several seconds, unresponsive, while Delligatti took hold of his shirt and told him again to "keep it up." Delligatti and Mack then turned Nunn over and eventually assisted him to his feet. Because of the fall, Nunn suffered a head injury that caused bleeding.

The parties dispute whether Delligatti shoved Nunn to the ground or instead used a "soft

empty-hand control" technique to guide him toward the processing room, during which Nunn allegedly tripped and fell.

## II. LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law," *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (citation omitted), and an issue of material fact is "genuine," and thus warrants trial, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248-49, 252. In evaluating a summary judgment motion, the facts are viewed in the light most favorable to the nonmoving party, and any reasonable inferences must be made in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party has the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then present affirmative evidence from which a reasonable trier of fact could return a verdict in its favor. *Anderson*, 477 U.S. at 257.

## III. DISCUSSION

Section 1983 creates a "species of tort liability," under which a person subjected "to the

deprivation of any rights, privileges, or immunities secured by the Constitution" by a state official can bring suit against that official. *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976); 42 U.S.C. § 1983.  In any Section 1983 action, the threshold question is whether there was a specific constitutional violation—here, an alleged violation of Nunn's Fourth Amendment right to be free from excessive force.  *See Saucier v. Katz*, 533 U.S. 194, 204 (2001).

Delligatti contends that the force was not excessive, and, in any event, that she is protected by qualified immunity through her position as a police officer.  Qualified immunity is a doctrine designed to give "government officials breathing room" by shielding them from suit when they "make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Thus, if Delligatti is entitled to qualified immunity, Nunn's Section 1983 claim fails.

The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  An official's entitlement to qualified immunity is assessed under a two-prong framework, the order of which is discretionary: (1) whether the facts shown demonstrate that the official violated a statutory or constitutional right; and, (2) whether the right at issue was "clearly established" at the time of the official's alleged misconduct, such that a reasonable official would have known that the conduct violated the plaintiff's rights.  *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024) (citing *Pearson*, 555 U.S. at 232).  "At summary judgment, the burden is on the officer to establish an entitlement to qualified immunity." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).

4

### A. Fourth Amendment

Turning first to whether Delligatti violated Nunn's constitutional rights—an inquiry that underlies both Nunn's Section 1983 claim and Delligatti's qualified immunity defense—a person bringing a Fourth Amendment excessive force claim must show both that they were seized within the meaning of the Fourth Amendment and that the seizure was unreasonable. *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). A seizure occurs "[w]henever an officer restrains the freedom of a person to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citation omitted). Neither party disputes that Nunn, handcuffed and in the police station's garage at the time of his injury, was seized for purposes of the Fourth Amendment. The only question is whether that seizure was reasonable.

Fourth Amendment reasonableness is evaluated from the perspective of a reasonable officer on the scene, not with the "20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). An officer's subjective intentions do not matter: ill will does not render otherwise reasonable force unconstitutional, nor can benign motives justify excessive force. *Id.* at 397. The standard is objective and allows for the fact that officers are often forced to make split-second judgments in tense, uncertain, and rapidly evolving circumstances. *Id.* at 396-97. At the same time, the analysis considers "all the relevant circumstances, including facts and events leading up to the climactic moment." *Barnes v. Felix*, 605 U.S. 73, 76 (2025). This "totality of the circumstances" inquiry "has no time limit." *Id*. While "the situation at the precise time of the [use of force] will often be what matters most . . . earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. *Id*. at 80.

#### i. *De Minimis Force*

As a threshold matter, Delligatti contends that she did not use force but, at most, used a

soft-hand technique to guide Nunn, and that Nunn simultaneously tripped and fell such that "[n]o force was used."[1] Nunn, by contrast, asserts that "the Defendant shoved Plaintiff to the ground." For force to be deemed unreasonable and thus violate the Fourth Amendment, a plaintiff "must show more than de minimis force." *Page v. Doyle*, 2019 WL 1790467, at *3 (E.D. Pa. Apr. 24, 2019); *accord Nardini v. Hackett*, 2001 WL 1175130, at *6 (E.D. Pa. Sept. 19, 2011) ("Generally, the force used must rise above the de minimis level in order for a constitutional claim to arise."); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (noting that more than de minimis force is necessary to support a Fourth Amendment violation).

Indeed, summary judgment has been granted to defendants on Fourth Amendment excessive force claims brought under Section 1983 based on a finding that the force applied by the defendant officers was de minimis. *See, e.g., Foster v. David*, 2006 WL 2371976, at *7 (E.D. Pa. Aug.11, 2006) (holding that pushing the plaintiff out of a doorway to execute a valid search warrant was not excessive force); *Garcia v. Cnty. of Bucks,* 155 F.Supp.2d 259, 264-65 (E.D. Pa. 2001) (concluding that grabbing the plaintiff's coat and arms and handcuffing him in the course of his arrest was a de minimis use of force and therefore not a violation of the Fourth Amendment); *Bensinger v. Mullen*, 2000 WL 1100781, at *2 (E.D. Pa. Aug.4, 2000) (finding that where force used by police in effectuating arrest and injuries sustained by plaintiff therefrom were de minimis, the Fourth Amendment was not violated as a matter of law).

But summary judgment is not a foregone conclusion here where Nunn maintains that

---

[1] It is unclear whether Delligatti contends that she used no force at all or, instead, that any force she used was not actionable under the Fourth Amendment. "Force" is commonly understood as "compel[ling] by physical means." *See Force*, Black's Law Dictionary (12th ed. 2024). The City of Coatesville Police Department's Use of Force Policy defines "soft empty-hand control" as a technique that has a "minimal possibility of injury," including "wristlocks, joint locks, and handcuffing." Thus, even if Delligatti employed a soft empty-hand control technique, that conduct still constitutes the use of force. This Court will therefore construe her argument as asserting that she did not use force actionable under the Fourth Amendment.

6

"while [he] was handcuffed, with his hands behind his back and defenseless, [Delligatti] shoved [him] to the ground," and video footage of the incident is not conclusive as to whether Delligatti shoved him to the ground or whether he tripped in the process of Delligatti using a soft-hand technique. *See, e.g.*, *Ringgold v. Keller*, 608 F. App'x 102, 104 (3d Cir. 2015) (explaining that because a jury could find "[f]rom the footage" that excessive force was used, the court did not believe that "all parts of [plaintiff's] version of events [were] 'blatantly contradicted' by the footage" and thus concluded that the issue presented a factual dispute best left to the jury). Evidence must be construed in the light most favorable to the plaintiff. *See Watson v. Haverford Twp. Police Dep't*, 2012 WL 1900629, at *13 (E.D. Pa. May 25, 2012) ("While Defendants assert that what occurred on the day in question was nothing more than de minimis force . . . the Court must construe the evidence in the light most favorable to Plaintiffs, the non-moving party."). Here, Nunn has produced sufficient evidence from which a reasonable jury could find that Delligatti shoved Nunn to the ground, conduct that would constitute more than de minimis force and thus establishes a genuine issue of material fact. *See, e.g.*, *Hatton v. Mullan*, 2018 WL 3748162, at *5 (D. Mass. Aug. 7, 2018) ("[I]t is clearly established that even a shove, if sufficiently unjustified, can ground an excessive force claim.").[2]

## ii. *Reasonableness of Delligatti's Use of Force*

In the alternative, Delligatti contends that, even if her conduct is characterized as a shove, that fact is immaterial and summary judgment is still warranted because, in her view, the force used was reasonable and necessary considering the surrounding circumstances. *See Graham*,

---

[2] Delligatti seeks to rely on *Scott v. Harris* for the proposition that this Court should analyze the facts as depicted in the video footage from the surveillance and body-worn cameras rather than adopting Nunn's characterization as would typically occur when assessing a motion for summary judgment. *See* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Yet here, Nunn's account is not "blatantly contradicted" by the video.

7

490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (internal citation and quotation marks omitted)).[3]

At the summary judgment stage once the court determines "the relevant set of facts" and draws "all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . the reasonableness of [the defendant's] actions . . . is a pure question of law." *Scott*, 550 U.S. at 381 n. 8; *see also Johnson v. City of Philadelphia*, 837 F.3d 343, 349 (3d Cir. 2016); *Abraham*, 183 F.3d at 290 ("[D]efendants can [] win on summary judgment *if the district court concludes*, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." (emphasis added) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).[4] Accordingly, after resolving all factual disputes in Nunn's

---

[3] Defendant relies on several cases suggesting that not every "push or shove" violates the Fourth Amendment, but each is factually distinguishable. In *Marable v. W. Pottsgrove Twp.*, the court upheld a forceful push where the plaintiff was not handcuffed, was extremely upset to a point where he was shouting and spitting at officers, and had repeatedly entered a house that officers had been told contained a gun. 2005 WL 1625055, at *11 (E.D. Pa. July 8, 2005), *aff'd*, 176 F. App'x 275 (3d Cir. 2006). Here, by contrast, Nunn was handcuffed, there was no evidence or allegation that he might be armed: the situation was not comparably "tense" to that in *Marable*. In *Atkinson v. McCarthy*, the court found that an officer's "decision to push [plaintiff] against his patrol car during the arrest did not violate the Fourth Amendment," in light of the plaintiff's "pushing and kicking back" as well as his refusal to lower loud music and to provide identification. 2019 WL 6842032, at *4 (W.D. Pa. Dec. 16, 2019). Here, there is no evidence that Nunn attempted to push or kick back at the officers when Delligatti allegedly pushed him. Lastly, in *Jones v. City of Jersey City*, the plaintiff only suffered a "little bruise," with the court explaining that "[a]n officer cannot reasonably anticipate that he will violate the Fourth Amendment every time he uses light force to push away bystanders attempting to interfere with an arrest." 45 F. App'x 196, 198 (3d Cir. 2002). Here, Nunn was allegedly not merely "pushed away," and the record reflects an injury more than a "little bruise."

[4] There appears to be confusion in the courts regarding whether objective reasonableness is to be determined by the judge or by the jury. In *Johnson*, despite characterizing the issue as a question of law, the court went on to say that "no reasonable juror could conclude that it was unreasonable for [defendant] to deploy lethal force in response." 837 F.3d at 350. Given *Scott*'s characterization of the issue as one of law, not of fact, it is the judge—not the jury—

8

favor—including the dispute over Delligatti allegedly shoving Nunn to the ground—the Court will assess, in light of the totality of the circumstances, whether Delligatti's conduct was reasonable under the Fourth Amendment.

In assessing the reasonableness of excessive force claims under the Fourth Amendment, courts consider the following factors: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and, (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.[5]

Turning to the first *Graham* factor, the severity of the crime, this application of force occurred in the context of Nunn's arrest for terroristic threats, simple assault, strangulation,

---

who must determine the ultimate finding of reasonableness.

Since *Scott*, very few courts have squarely addressed this concept, but this Court finds the Fourth Circuit's approach instructive. In *Armstrong v. Hutcheson*, Judge Quattlebaum, in wrestling with the question "who decides whether the officers' conduct was objectively reasonable? The judge or the jury?", explained:

> In Fourth Amendment cases, disputes over historical facts can be material. So, if there are genuine disputes over what happened factually, courts must construe all historical facts in favor of the non-moving party to determine whether the dispute affects the outcome of the claim under the governing law. That is no different in Fourth Amendment cases than in any other civil case. But unlike in tort law, in Fourth Amendment cases, objective reasonableness is not a jury question—it is a question of law. Said differently, the court must decide, under the nonmovant's version of the facts, the purely legal issue of whether a constitutional violation has occurred.
>
> That means that if, after construing the historical facts in favor of the non-moving party, the court determines the officers' conduct was unreasonable, summary judgment for the officers is improper. The case would then proceed to trial for a jury to resolve not the ultimate question of the conduct's reasonableness—because that is a question for the court—but the disputes over any material historical facts. Then, after the jury resolves those disputes, the court decides the objective reasonableness of the officers' conduct. On the other hand, if at the summary judgment stage, the court decides the officers' conduct was reasonable—even when construing the historical facts in favor of the non-moving party—summary judgment is appropriate. In that situation, the factual dispute is not material because, even if the jury believes the nonmovant's version of events, no constitutional violation occurred.

80 F.4th 508, 514-15 (4th Cir. 2023) (citations omitted).

[5] Courts in the Third Circuit also consider "the fact that the physical force applied was of such an extent as to lead to injury," as well as "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). However, neither party has advanced any argument under these factors, and this Court therefore does not address them.

resisting arrest, harassment, and disorderly conduct. This is not a case where there was no underlying crime, *see, e.g., Keller v. Crawford*, 465 F. Supp.3d 472, 479 (E.D. Pa. 2020) ("[G]iven that there was no underlying crime in this case, even considering the need to bring the Plaintiff under control, once that was accomplished, this factor weighs against any lengthy, continuous use of force."), but it also is not a case "where a violent assault involving a gun was itself the catalyst." *Sharrar*, 128 F.3d at 822. Instead, the charges here range in seriousness— from disorderly conduct, which is considered "relatively minor," *Bannan v. City of Philadelphia*, 2012 WL 406325, at *3 (E.D. Pa. Feb. 9, 2012), to strangulation, a more serious offense that weighs in favor of reasonableness, *see Wheeler v. City of Philadelphia*, 367 F. Supp.2d 737, 743 (E.D. Pa. 2005) ("Our Court of Appeals is more likely to find a crime severe when it is violent." (citing *Sharrar,* 128 F.3d at 822)); *see also Farnsworth v. City of Geneva*, 750 F. Supp.3d 152, 165 (W.D.N.Y. 2024) (finding that "the severity of the crimes alleged, including strangulation and criminal possession of a weapon" weighed in favor of the officers). Ultimately, given the violent strangulation charge, this factor weighs slightly in favor of reasonableness.

The second *Graham* factor poses the question of whether Nunn posed an immediate threat to the safety of the officers or others. While Delligatti points to Nunn's prior statements that he would "fuck up" and "kill" the officers, the parties dispute whether these statements were actual threats. A "threat" is commonly understood as "[a] communicated intent to inflict harm or loss on another." *See Threat*, Black's Law Dictionary (12th ed. 2024). With respect to whether threats were made: Nunn maintains they were not, while Delligatti states the opposite. The footage, however, reflects that while Nunn was evidently angry his belligerent bellicosity was conditional in nature and trammeled by handcuffs and surrounding officers: thus, not an actual threat.

10

First, this setting undermines the reasonableness of Delligatti's use of force. *See Galvez v. Bruce*, 552 F.3d 1238, 1244-45 (11th Cir.2008) (allowing excessive force claim to proceed where an officer slammed a misdemeanor suspect into a concrete structure after he was handcuffed, posed no risk or danger of flight, and offered no resistance); *Lockhoff v. Slonaker*, 2017 WL 2423790, at *10 (E.D. Pa. June 5, 2017) (finding it critical, in assessing *Graham*'s second factor, that the plaintiff "had already been placed in handcuffs, and was being detained against the patrol vehicle by two state troopers"). Second, verbal threats alone, made several minutes before and detached from the use of force, do not constitute an "immediate threat to the safety of the officers and or others," particularly where, as here, the individual is secured within a police station. *See Jones v. Buchanan*, 325 F.3d 520, 530 (4th Cir. 2003) (characterizing "screaming" and "foul language" in the presence of an officer as a nuisance rather than an immediate threat under *Graham*); *King v. City of Rockford, Michigan*, 97 F.4th 379, 394 (6th Cir. 2024) (holding that a plaintiff's "noncompliance with commands" and "continued yelling during the interaction" could be viewed as posing no immediate threat); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("*If the person is armed*—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." (emphasis added)). Accordingly, this factor weighs against the reasonableness of the force used.

The third *Graham* factor, whether Nunn actively was resisting arrest or attempting to evade arrest by flight, also weighs against reasonableness. Cases finding force reasonable under this factor typically involve arrestees running or otherwise trying to flee. *See, e.g.*, *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013) (finding use of force reasonable where the officer did not have "the opportunity to use less intrusive means of apprehension" because the

plaintiff was "clearly running to avoid arrest and was being completely non-compliant"); *Chapolini v. Capodanno*, 2021 WL 4262319, at *11 (E.D. Pa. Sept. 20, 2021), *aff'd*, 2023 WL 179843 (3d Cir. Jan. 13, 2023) (finding a reasonable use of force where the plaintiff "was attempting to evade arrest by running out of the police station."). Here, no such allegation has been made. Instead, as stressed in analyzing the second factor, Nunn was secured and handcuffed in a closed police station garage, making any meaningful evasion or flight highly unlikely, which weighs against reasonableness. *See Lamont v. New Jersey*, 693 F.3d 177, 184 (3d Cir. 2011) ("Even where an officer is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished."); *see also Castillo v. Stepien*, 2009 WL 4142725, at *14 (D.N.J. Nov. 24, 2009) ("Physical violence against an arrestee after he is secured and is not resisting arrest is clearly prescribed by Fourth Amendment jurisprudence.").

Also relevant to this factor, the parties dispute whether Nunn was generally compliant. Delligatti argues he was not, pointing to the force allegedly needed to place him inside the police vehicle after his arrest and his failure to comply with commands to exit the vehicle once inside the garage. Nunn denies both, asserting that he did everything he was told to do. His account, however, is blatantly contradicted by the video footage, which shows officers using force to get him into the vehicle—after Nunn turns away from the vehicle, refuses to get in, and boasts it will take all the officers to put him inside—as well as footage of Nunn refusing to immediately exit the vehicle, stating that he needs time to "decompress." This Court will therefore not credit Nunn's version of these facts. *See Scott*, 550 U.S. at 380.

Even so, when assessing the totality of the circumstances, other courts have treated such brief, nonviolent instances of noncompliance as insufficient, standing alone, to establish that a

person was actively resisting arrest. *See Monticciolo v. Robertson*, 2017 WL 4536119, at *9 (D.N.J. Oct. 11, 2017) (concluding that "under the third *Graham* factor, [it could be found] Plaintiff was not attempting to resist arrest or flee at the time" where "[t]he only alleged act of resistance identified . . . was Plaintiff's initial failure to comply with the officers' orders to get down on the ground."); *Anthony v. Seltzer*, 696 F. App'x 79, 82 (3d Cir. 2017) ("[U]nder long-established Fourth Amendment law, force may not legitimately be used against an individual who is compliant and poses no ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant."). Even though, here, Nunn was showing some resistance to officers' commands, given that he was not actively attempting to flee and was contained within a secured police station while handcuffed, this factor weighs against a finding of reasonableness.

It follows that whether Delligatti shoved Nunn is a disputed issue of material fact which precludes summary judgment on Nunn's Fourth Amendment excessive force claim in that it must be decided—one way or the other—by a jury.[6]

### B. Qualified Immunity

Delligatti argues even if there is a genuine dispute of a material fact on Nunn's Section 1983 and state law battery claims, qualified immunity nonetheless forecloses this action. Having already determined that Delligatti's conduct could be found unreasonable, depending on how a

---

[6] Because of this outstanding material fact dispute, summary judgment on Plaintiff's assault and battery claim is likewise inappropriate. Under Pennsylvania law, "[a] police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive," because "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994). "The question of whether an officer is liable for assault and battery under Pennsylvania law turns on whether he or she has used an excessive degree of force, as a matter of Fourth Amendment law, in dealing with an arrestee." *Garey v. Borough of Quakertown*, 2013 WL 3305222, at *7 (E.D. Pa. July 1, 2013) (citing *Russoli v. Salisbury Twp.*, 126 F. Supp.2d 821, 870 (E.D. Pa. 2000)). Because there are genuine disputes of material fact underlying whether Delligatti's use of force vis-à-vis Nunn was reasonable, Delligatti is not entitled to summary judgment on Nunn's assault and battery claim.

13

jury resolves the dispute of material fact discussed above, Delligatti would only be able to secure qualified immunity via the second prong in the qualified immunity analysis, which requires this Court to determine whether the constitutional right at issue was clearly established at the time of the incident.

Because the second prong is grounded in the principle of notice, a right is not deemed "clearly established" if it is defined at "a high level of generality." *Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 516 (3d Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The central inquiry is whether, in the context of the case at bar, "the violative nature of *particular* conduct is clearly established." *Williams*, 117 F.4th at 516 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original)). The Court must look to the body of case law existing at the time of the alleged violation to determine whether it afforded officials fair notice that their conduct was unlawful. *See Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 645 (3d Cir. 2024). Although there need not be "a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas*, 595 U.S. at 5; *Montemuro*, 99 F.4th at 645 (quoting *Ashcroft*, 563 U.S. at 741). Typically, such case law must be derived from "factually analogous" Supreme Court and Third Circuit precedent. *Montemuro*, 99 F.4th at 645 (quoting *Jefferson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021)). However, in the absence of controlling authority, a "robust 'consensus of cases of persuasive authority'" may suffice. *See Urda v. Sokso*, 146 F.4th 311, 314 (3d Cir. 2025) (quoting *Ashcroft*, 563 U.S. at 741-42) (internal citations omitted).

While Delligatti does not precisely define the right at issue, she appears to say that there is no clearly established right to be free from light force by arresting officers. Without deciding whether such a right was clearly established, this Court concludes that, because of the factual

dispute concerning the nature of the force at issue—whether Delligatti used a mere soft-hand technique or whether she instead shoved Nunn to the ground, a distinction that materially alters the contours of the right—it is not possible at summary judgment to determine whether Delligatti is entitled to qualified immunity. *See Parrilla Perez v. Vega*, 2020 WL 977433, at *9 (E.D. Pa. Feb. 28, 2020) ("Where the reasonableness of the force used is factually disputed, and the force can be interpreted as plainly unreasonable and in violation of a clearly established right if a plaintiff's factual account is given credit, district courts tend to deny qualified immunity."); *Dimoff v. Amarose*, No. 1:22-CV-00072, 2024 WL 3330566, at *12 (M.D. Pa. July 8, 2024) (holding that, in light of genuine disputes of material fact surrounding an excessive force claim, it was "not the appropriate time in the proceedings to resolve the issue of qualified immunity"); *Guthrie v. Guthrie*, 216 F. Supp.3d 590, 596 (W.D. Pa. 2016) (same); *see also Giles v. Kearney*, 571 F.3d 318, 327-28 (3d Cir. 2009) (finding, in the context of the Eighth Amendment, correctional officers were not entitled to qualified immunity on summary judgment where "a dispute of material fact" existed regarding the alleged excessive force because the "critical event [was] controverted").

## IV. CONCLUSION

For the reasons set forth above, Delligatti's Motion for Summary Judgment shall be denied.

An appropriate order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

_____

**WENDY BEETLESTONE, C.J**.
